UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-225(1) (NEB/DTS)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SHARMAKE JAMA,

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and defendant SHARMAKE JAMA (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter the "United States" or the "Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges.** The defendant agrees to plead guilty to Count Seven of the Indictment, which charges the defendant with wire fraud, in violation of 18 U.S.C. § 1343, and Count 20, which charges the defendant with money laundering, in violation of 18 U.S.C. § 1957. The defendant fully understands the nature and elements of the crimes with which he has been charged. At the time of sentencing, the Government agrees to move to dismiss the remaining counts of the Indictment against the defendant.

2.    **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Count Seven and Count 20 of the Indictment. In pleading guilty, the

1

defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

## Count 7

From in or about October 2020 through January 2022, Jama knowingly participated with others in a fraudulent scheme to obtain and misappropriate millions of dollars in federal child nutrition program funds. Specifically, Jama and other conspirators fraudulently obtained millions of dollars in federal child nutrition program funds by falsely claiming to have served meals to thousands of children per day.

Jama was one of the principals of Brava Restaurant & Cafe LLC ("Brava Restaurant"), located in a retail strip mall in Rochester, Minnesota. Jama was a signatory who controlled Brava Restaurant's bank accounts. In September 2020, Jama and Aimee Bock applied for Brava Restaurant's enrollment in the Federal Child Nutrition Program under the sponsorship of Bock's non-profit, Feeding Our Future. Jama enrolled in the Federal Child Nutrition Program after he first prepared application paperwork at the direction of Salim Said, the co-owner of Safari Restaurant in Minneapolis, which was another business involved in the scheme to defraud the food program.

Subsequently, Jama's Brava Restaurant operated a food site in late 2020 and 2021. The defendant and other conspirators claimed to be serving approximately 2,000 or 3,000 daily breakfasts and lunches to children, for which they fraudulently claimed and received millions of dollars in federal child nutrition program funds.

2

Ultimately, Jama—through Brava Restaurant—claimed to serve more than 1.7 million meals in Rochester as part of the Federal Child Nutrition Program in a little over one year, which was substantially higher than the real number of meals served.

The conspirators also submitted fake attendance rosters purporting to list the names of children who purportedly received their food at sites. The rosters were fraudulent in that the names on them were fake or otherwise did not correctly reflect children that were fed.

Based on these fraudulent claims, Feeding Our Future paid out over $5.3 million in federal child nutrition program reimbursements for meals purportedly served to children by the defendant and his co-conspirators. However, as the defendant knew, his receipt of such funds was fraudulent because he and other conspirators submitted inflated meal counts. Of the $5.3 million, Jama's Brava Restaurant received $4.3 million directly from Feeding Our Future, and it received over $900,000 from Salim Said's Safari Restaurant.

In addition, Jama and his associates at Brava Restaurant coordinated their establishment of shell companies through which they received and disbursed Federal Child Nutrition Program funds to make expenditures for their own benefit that had nothing to do with feeding children. More specifically, on the exact same date—January 7, 2021—Salim Said paid to register six different companies with the State of Minnesota for Jama and his Brava Restaurant associates. For Jama, Salim Said paid to register Mumu LLC. In 2021, Jama deposited at least $872,230, almost all of which was misappropriated Federal Child Nutrition Program funds, into his Mumu LLC bank accounts.

The defendant admits that fraudulent payments from Feeding Our Future deposited into Brava Restaurant's bank account constitute an interstate wiring for the purpose of executing the scheme in violation of Title 18, United States Code, Section 1343. For example, as alleged in Count Seven, on or about May 21, 2021, Jama's Brava Restaurant deposited a $1,121,514 payment from Feeding Our Future. The defendant knew he was not entitled to such a payment because it was substantially in excess of any reimbursement amount to which he might have been entitled to receive.

Jama used federal child nutrition funds to pay for personal expenditures unrelated to feeding children, including paying approximately: $88,565.70 for a 2021 GMC Sierra 3500 Denali 4WD Crew Cab truck; $377,066 for a home located at 2689 Daybreak Court SE in Rochester, Minnesota; and $200,000 for a home located at 3581 153rd Street W in Rosemount, Minnesota.

### Count 20

On or about June 28, 2021, in the State and District of Minnesota and elsewhere, the defendant knowingly engaged and attempted to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, in violation of Title 18, United States Code, Section 1957, namely the deposit of a check in the amount of $336,599 from an account controlled by Jama to Rochester Title for the purchase of a home located at 2689 Daybreak Court SE in Rochester, Minnesota, such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343.

3. **Waiver of Pretrial Motions.** The defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences.** The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss

of the right to carry firearms, the right to vote, and the right to hold public office. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6. **Statutory Penalties**. The defendant understands that Count 7 of the Indictment (wire fraud, in violation of 18 U.S.C. § 1343) is a felony offense that carries the following statutory penalties:

    a. a maximum of 20 years in prison;

    b. a supervised release term of not more than 3 years;

    c. a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest; and

    d. a mandatory special assessment of $100.

The defendant understands that Count 20 of the Indictment (money laundering, in violation of 18 U.S.C. § 1957) is a felony offense that carries the following statutory penalties:

    a. a maximum of 10 years in prison;

    b. a supervised release term of not more than 3 years;

    c. a maximum fine of $250,000, or twice the amount of the criminally derived property, whichever is greatest;

    d. restitution as agreed to by the parties in this agreement; and

    e. a mandatory special assessment of $100.

7. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all

relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

    a.    <u>Base Offense Level</u>. The parties agree that for Count 7 the base offense level is 7. U.S.S.G. § 2B1.1(a)(1).

           The parties agree that for Count 20 the base offense level is the offense level for the underlying offense from which the laundered funds were derived, pursuant to U.S.S.G. § 2S1.1(a)(1). Therefore, the base offense level for Count 20 is 7 as calculated under Count 7.

    b.    <u>Specific Offense Characteristics</u>. The parties agree that for Count 7 an **18-level** enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(J) because the loss was more than $3.5 million but not more than $9.5 million. The parties agree that the offense level should be increased by **2** levels because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits). The parties agree that no other specific offense adjustments apply.

           The parties agree that for Count 20 a one-level enhancement applies pursuant to U.S.S.G. § 2S1.1(b)(2)(A) because defendant was convicted under 18 U.S.C. § 1957.

    c.    <u>Chapter 3 Adjustments</u>. The parties agree that Count 7 and Count 20 of the Indictment are grouped together into a single group because both counts embody conduct that is treated as a specific offense characteristic in the guideline applicable to the other count. U.S.S.G. § 3D1.2(c). Therefore, the offense level applicable to the group will be the highest offense level of the counts in the group, which would be 28. The parties agree that no Chapter 3 adjustments apply.

    d.    <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction

      pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e.    <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.    <u>Zero-Point Offender Adjustment</u>. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

g.    <u>Guidelines Range</u>. If the adjusted offense level is **23**, and the criminal history category is I, the Sentencing Guidelines range is **46-57** months of imprisonment.

h.    <u>Fine Range</u>. If the adjusted offense level is **23**, the Sentencing Guidelines fine range is **$20,000** to **$200,000**. U.S.S.G. § 5E1.2(c)(3).

8. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

10. **Revocation of Supervised Release.** The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed

on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

11. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

12. **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crimes. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Indictment. The defendant agrees that he owes restitution in the amount of $5,310,522 jointly and severally.

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement, agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets, and expressly authorizes the United

States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the wire fraud scheme alleged in of the Indictment, including but not limited to:

   (1) 2021 GMC Sierra 3500 Denali 4WD Crew Cab truck; VIN: 1GT49WEY8MF189198;

   (2) $113,417.66 seized from Huntington National Bank account x7766, f/k/a TCF Bank account 5416891505 held in the name of Mumu LLC;

   (3) The real property located at 2689 Daybreak Court SE in Rochester, Minnesota;

   (4) The real property located at 3581 153rd Street W in Rosemount, Minnesota; and

   (5) $5,928.9 seized from Bank of America account No. x7243, held in the name of Brava Restaurant & Café LLC.

The defendant agrees that this property is forfeitable because it constitutes or is derived from proceeds of the wire fraud scheme charged in the Indictment. With respect to item 1 above, the 2021 GMC Sierra 3500 Denali, the defendant agrees to tender this vehicle to the United States within 10 days of the date of this Plea Agreement.

With respect to item 3 above, the residential property located at 2689 Daybreak Court SE in Rochester, Minnesota, the United States agrees that it will forfeit a sum of money equal to the equity in this property that is traceable to payments made with

11

fraud proceeds in lieu of forfeiting that real property, which is the approximate amount of $377,066, provided that any such payment to the United States is made using funds not traceable to the fraudulent scheme described above and that such payment is made at least 30 days prior to the defendant's sentencing hearing. With respect to item 4 above, the residential property located at 3581 153rd Street W in Rosemount, Minnesota, the United States agrees that it will forfeit a sum of money equal to the equity in this property that is traceable to payments made with fraud proceeds in lieu of forfeiting that real property, which is the approximate amount of $200,000, provided that any such payment to the United States is made using funds not traceable to the fraudulent scheme described above and that such payment is made at least 30 days prior to the defendant's sentencing hearing.

In addition, the defendant consents to the entry of a money judgment forfeiture in the amount of $5,310,522, which represents the amount of proceeds he and Brava Restaurant obtained from the wire fraud scheme alleged in the Indictment. The defendant will be given credit against the forfeiture judgment for the net value of all assets forfeited from him in connection with this case.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds.

15. **Waivers of Appeal and Collateral Attack.** The parties hereby waive the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to: the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the top of the Guidelines range, and an appeal by the government of the substantive reasonableness of a term of imprisonment below the bottom of the Guidelines range.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

16. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

17. **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this

plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

Date: 1/29/25

LISA D. KIRKPATRICK
Acting United States Attorney

BY: MATTHEW S. EBERT
JOSEPH H. THOMPSON
HARRY M. JACOBS
Assistant United States Attorneys

Date: 1/29/25

SHARMAKE JAMA
Defendant

Date: 1/29/25

RYAN M. PACYGA
Counsel for Defendant

15